JDN

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald J. Harris, | No. CV 04-2770-PHX-DGC (ECV) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph Arpaio, et al., | |
| Defendants. | |

Plaintiff Ronald J. Harris brought this civil rights action under 42 U.S.C. § 1983 against Joseph Arpaio, Maricopa County Sheriff, and Dr. Gale Steinhauser, Director of Maricopa County Correctional Health Services (CHS) (Doc. #1). Defendants moved to dismiss three of Plaintiff's six claims for failure to exhaust administrative remedies (Doc. #43). With his response to Defendants' motion, Plaintiff filed a Motion for Sanctions against Defendants and their counsel (Doc. ##47-48[1]). Defendants replied in support of their motion and opposed the request for sanctions (Doc. #49-50). They then filed a separate Motion for Summary Judgment as to the entire Complaint (Doc. #51). Because Plaintiff failed to respond to the summary judgment motion, Defendants moved for the Court to summarily grant it (Doc. #64).

---

[1] Doc. #47 and Doc. #48 reflect the same filing, but appear separately on the docket to indicate the response memorandum and the Motion for Sanctions. Similarly, Doc. #49 and Doc. #50 are also the same filing, but represent the reply in support of the summary judgment motion and the response to the Motion for Sanctions respectively.

The Court will grant the Motion to Dismiss, deny the Motions for Sanctions and to summarily grant the summary judgment motion, and grant the Motion for Summary Judgment.

**I.    Background.**

Plaintiff's claims arose during his confinement at the Durango Jail in Phoenix, Arizona, from August 2004 through approximately January 26, 2005 (Doc. #1; Doc. #52, Ex. A, Wilcox Aff. ¶ 14). Plaintiff alleges that he suffers from Crohn's disease, partial blindness and hearing loss, two hernias, a ruptured disc, a partial stomach, food absorption problems, acid reflux, sciatic neuropathy, a partial edema on his buttock, and clinical depression (id.). He also stated that he uses crutches and a cane to walk and that his religious beliefs require that he eat a kosher diet (id.).

According to the allegations in Count I, despite his need for a proper medical diet, Defendants fed Plaintiff food that was insufficient in calories and inappropriate for someone with Crohn's disease (id. at 4-4 Continuation (Cont.)). Plaintiff claimed that as a result, he suffered acid indigestion, severe headaches, recurrent nausea and diarrhea, severe pain, serious weight fluctuations, and vomiting (id. at 4 Cont.). He alleged that his condition required hospitalization in October 2004 (id.). In Count II, Plaintiff asserts that Defendants failed to provide proper medical care for the edema on his left buttock and his condition became progressively worse (id. at 5). He further alleges that Defendants knowingly failed to adequately treat his sciatic neuropathy (id. at 5 Cont.).

In Count III, Plaintiff contends that the difficulties he faced during transport for court appearances – primarily extensive walking and confinement in inadequate holding cells – amounted to a threat to his safety (id. at 6). Count V concerns his exercise of religion, which he alleged was violated by the denial of Jewish services and a regular kosher diet (id. at 8). And in Count VI, Plaintiff alleges that the jail pods and transport vehicles were insufficiently equipped for the handicapped and he was therefore forced to hop up steps and attempt to perform daily tasks – such as showering and brushing his teeth – while on crutches or

balanced on one foot on wet floors (id. at 9). He states that he slipped many times in the shower and restroom areas (id.).

Finally, in Count VIII Plaintiff claims that when he arrived at the jail he furnished Defendants with the names of all his physicians and a list of his medications (id. at 11). He asserts that he nonetheless was denied proper care or medications for his ailments (id. at 11 Cont.).

The Court screened Plaintiff's Complaint and ordered Defendants to respond to these six claims (Doc. #5).[2] Defendants filed separate Answers (Doc. ##11, 20) and then filed a joint Motion to Dismiss Counts III, V, and VI of Plaintiff's Complaint for failure to exhaust administrative remedies (Doc. #43). With his response to the motion, Plaintiff moved for sanctions against Defendants (Doc. ##47-48).

Defendants then moved, on various grounds, for summary judgment as to all claims (Doc. #51). The Court issued an Order informing Plaintiff of his obligation to respond to the summary judgment motion (Doc. #59).[3] Plaintiff requested additional time to submit his response (Doc. #61). That request was granted (Doc. #62); however, Plaintiff did not file a response memorandum. Defendants therefore filed a motion asking the Court to summarily grant their summary judgment motion (Doc. #64).

**II.    Motion to Dismiss.**

    **A.    Parties' Contentions.**

Defendants contend that for Counts III, V, and VI – which relate to those claims concerning transport to the courts, religious meals, and lack of disability accommodations – Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. #43). In support, Defendants submit the affidavit of Susan Fisher, a Sergeant assigned to the Inmate Hearing Unit (id., Ex. 1, Fisher Aff. ¶ 1).

---

[2] Upon screening, the Court dismissed Count IV, which alleged retaliation, and Count VII, which alleged denial of access to the courts (Doc. #5).

[3] Notice was required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998).

Fisher attests that the inmate grievance procedures, governed by Policy DJ-3, entail a three-tiered system including (1) the initial grievance and decision by the Bureau Hearing Officer, (2) the Institutional Grievance Appeal, and (3) the External Grievance Appeal (id. ¶¶ 10-12). She further attests that Policy DJ-3 does not restrict the type of issue or grievance that an inmate may submit (id. ¶ 8). Fisher avows that the jail has processed numerous grievances about the lack of proper religious meals, inmate transportation, the failure to provide disability accommodations, and medical care (id. ¶ 15). According to the grievance records maintained by the jail, during his confinement Plaintiff filed over 30 grievances, which pertained to medical care, medical and religious diet, and conduct by jail staff (id. ¶¶ 16-17). But Fisher avows that Plaintiff appealed just three grievances through the three–tiered administrative review process and those three exhausted grievances only concerned the lack of a proper medical diet (id. ¶ 18). Defendants attach a copy of Policy DJ-3 (id., Ex. A) and a copy of an excerpt from the Rules and Regulations for Inmates (id., Ex. B).

The Court issued an Order informing Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions (Doc. #45).[4] In response, Plaintiff argues that he filed 26 grievances that included complaints about medical issues, diet and kosher food, and the lack of disability accommodations (Doc. #47 at 1). He claims that he sent Defendants copies of his 26 grievances during discovery and that on "each document there is a record of appeal to the external referee" (id. at 3). Attached to his response are copies of (1) the list of all his grievances filed from September 2004 to January 2005 (id., Ex. 1), (2) Plaintiff's 2004 medical External Grievance Appeal and the External Referee's response thereto (id., Exs. 2-4), and (3) Plaintiff's 2004 grievance concerning medical diet in which the Bureau Hearing Officer noted that Plaintiff sought to appeal the grievance (id., Ex. 5).

---

[4]Notice was required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003).

- 4 -

Plaintiff also argues that Defendants' motion has no merit in light of his grievances, which they had access to, and that they merely submitted a template pleading that is unsupported by the facts (Doc. #48 at 2). Plaintiff therefore contends that in failing to present all the evidence to the Court and instead filing a false pleading, Defendants have failed to comply with the minimum standard of ethics and code of conduct required by the Rules of Professional Conduct (id. at 2-3). For these reasons, Plaintiff moved for sanctions and $500 for costs (id. at 3).

In their reply in support of the Motion to Dismiss, Defendants clarify that they are only seeking dismissal for those claims that Plaintiff did not fully exhaust (Doc. #49). They concede that Plaintiff exhausted those claims related to medical diet (Count I), medical care (Count II), and medications (Count VIII) (id. at 3). Defendants contend that Plaintiff attempts to rely on a single External Grievance Appeal to show exhaustion of all claims, when, in fact, that appeal only related to medical issues (id.). As to Plaintiff's request for sanctions, Defendants argue that their motion is well-founded in the law and the facts and is specific only to those claims that were unexhausted; thus, there are no ethical violations (id.).

### B.   Legal Standard.

Plaintiff must exhaust "available" administrative remedies before bringing this action. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 919-21 (2007). Defendants bear the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method

to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (citation omitted).

### C. Analysis.

The record demonstrates that a grievance system was available at the jail for any issue and that Plaintiff regularly used this grievance system to file complaints (Doc. #43, Ex. 1, Fisher Aff. ¶¶ 8, 17). Defendants acknowledge that Plaintiff fully exhausted some of the claims set forth in this action. Their evidence also demonstrates that not all of Plaintiff's complaints were appealed through to the External Referee, including those related to transportation, religious meals, and disability accommodations (id. 19).

Plaintiff's contentions regarding exhaustion of these three counts are inconsistent. In his verified Complaint, Plaintiff alleges that he did not appeal a request for relief on Count III (transportation) because he was told that the issue was related to security and was therefore not grievable (Doc. #1 at 6). He states that he did not file a grievance as to Count V (exercise of religion) on the grounds that the issues were not grievable and tank orders and grievances were disposed of by officers (id. at 8). And he indicates that he did not grieve Count VI (disability accommodations) because there were no available administrative remedies for building and disability-law issues (id. at 9). In his response memorandum, however, Plaintiff argues that he exhausted all three claims. He contends that there is a record of an appeal to the External Referee on all of his grievances, but he fails to submit any evidence to support this contention despite his assertion that he has copies of the documents for each of his 26 grievances (see Doc. #47 at 3).

Plaintiff's conflicting statements regarding whether he filed grievances or exhausted his claims are insufficient to overcome Defendants' evidence of nonexhaustion for Counts III, V, and VI. The Motion to Dismiss will therefore be granted, and these three counts will be dismissed without prejudice. In light of this conclusion, Plaintiff's Motion for Sanctions will be denied.

### III. Motion for Summary Judgment.

#### A. Motion to Summarily Grant Motion for Summary Judgment.

- 6 -

Failure to timely oppose a summary judgment motion may result in the granting of that motion if the movant shifts the burden to the nonmovant to demonstrate that a genuine issue of material fact remains for trial. Marshall v. Gates, 44 F.3d 722, 725 (9th Cir. 1995). Although Plaintiff did not respond to the summary judgment motion, he did file a verified Complaint (Doc. #1). A verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995). The Court will therefore consider Plaintiff's Complaint in the summary judgment analysis and deny Defendants' motion to summarily grant their Motion for Summary Judgment (Doc. #64).

**B.   Parties' Contentions.**

The remaining claims are Counts I, II, and VIII, which relate to medical diet, medical treatment, and medications. Defendants seek summary judgment on the basis that (1) Plaintiff did not allege a sufficient physical injury, (2) Plaintiff cannot show deliberate indifference, (3) Plaintiff received proper medical care, (4) Defendants are not liable in their individual capacities, and (5) Plaintiff cannot recover punitive damages (Doc. #51).[5] Defendants submit the affidavits of Todd Wilcox, CHS Medical Adviser (Doc. #52, Ex. A), and Kundavaram Reddy, Registered Dietician (Doc. #55, Ex. B).

Reddy avers that Plaintiff was initially put on a kosher diet in August, 2004, and his diet was then modified the following month so that he received a low residue (fiber) diet, which is appropriate for those with Crohn's disease (id., Ex. B, Reddy Aff. ¶¶ 8-9, 11-13). Reddy attests that he met with Plaintiff to discuss his diet after he filed a grievance in September 2004 (id. ¶ 14). Reddy also states that he regularly met with the Durango food service staff to investigate Plaintiff's complaints, instruct and train the staff on the proper preparation of Plaintiff's diet, and ensure that Plaintiff continued to receive a modified kosher and low residue diet (id. ¶¶ 16-17). Wilcox adds that in addition to the kosher and low residue diet, Plaintiff received numerous other modified diet orders when necessary to

---

[5] Defendants' other arguments for summary judgment apply only to the dismissed counts.

prepare him for various medical procedures (Doc. #52, Ex. A, Wilcox Aff. ¶ 17). Reddy indicated that dietary guidelines established by the U.S. Recommended Dietary Reference Intake provide that sedentary activity levels – the category of jail inmates – should have 2400 to 2500 calories daily (Doc. #55, Ex. B, Reddy Aff. ¶ 22). He states that the meals served in Maricopa County jails provide a minimum of 2500 calories per day, though some special medical diets vary slightly but still provide no less than 2200 calories per day (id. ¶ 23).

Wilcox's affidavit is supported by over 200 pages of medical records that document Plaintiff's medical treatment from August 2004 through January 2005 (Doc. #52, Ex. A, Doc. ##52-55, Exs. 1-24). Wilcox attests that during this period, Plaintiff received almost constant medical care, including a 6-day stay in the Psychiatric Unit upon his arrival at the jail; approximately 25 consultations with CHS medical personnel; and approximately 35 evaluations for medications and care (Doc. #52, Ex. A, Wilcox Aff. ¶¶ 9-10, 14-15). Wilcox further attests that during his stay at the jail, Plaintiff was seen twice daily by licensed practical nurses for the administration of medications and other services (id. ¶ 20). And according to Wilcox, Plaintiff was granted numerous special requests and accommodations in response to his needs (id. ¶ 19). These accommodations included extra sheets, blankets, towels and crutches; a cane; an extra pair of underwear; and ice (id. ¶¶ 19-20).

In response to a request for pain medication for his Crohn's disease, Plaintiff was prescribed Prilosec (id. ¶ 11(b)). When Plaintiff became concerned that he was not receiving the correct medication and that the Prilosec was harming his stomach, the Director of Pharmacy was consulted to review the use of Prilosec for Plaintiff's Crohn's treatment (id. ¶ 11(j-l)). The Director of Pharmacy and the medical provider determined that Prilosec was the appropriate course of treatment for Plaintiff (id. ¶ 11(l)(ii)).

Finally, Wilcox avows that Plaintiff regularly refused medical care against the advise of the medical staff (id. ¶ 18). Defendants proffer copies of 7 Health Care Refusal Slips signed by Plaintiff and dating from October to December 2004 (Doc. #54, Ex. A, Ex. 22).

Plaintiff alleges that despite his assigned low residue diet, he still received regular jail breakfast items and a 700 calorie kosher dinner, which he claims is insufficient caloric intake

- 8 -

(Doc. #1 at 4-4 Cont.). He also alleges that his breakfast bags were often stolen or switched so that he did not receive the proper items (id. at 4 Cont.). Plaintiff claims that Defendants refused all of his requests to either go to a hospital, where he could be fed properly, or be assigned a kitchen job (id.).

As to the medical treatment he received at Durango Jail, Plaintiff asserts that the injury to his left buttock caused severe pain and that Defendants provided only minimal pain relief (id. at 5). He states that his condition worsened and required him to use crutches. Further, even though Plaintiff's foot was "deadened, swollen and painful," he was only given pain medication for one week (id.). He alleges that his sciatic neuropathy remained untreated yet he continued to be billed for "incompetent and negligent medical treatment" (id. at 5 Cont.).

In regard to his medications, Plaintiff claims that he came into jail taking Effexor 75, Ambien, Protonic or Prevacid, Flexeril, Celebrex, Plavix, and Remecade (id. at 11). He alleges that once in jail, he received only Effexor 75 and only small doses of pain medication and Prilosec, which caused fistulas in his stomach. He states that he was eventually given Plavix, Effexor, and Prevacid, but his health continued to deteriorate (id. at 11 Cont.).

**C.    Legal Standard.**

**1.    Summary Judgment.**

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles,

66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the nonmovant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party presents evidence that, taken by itself, would establish the right to a directed verdict at trial, the motion for summary judgment must be granted in the absence of any significant probative evidence tending to support the opposing party's theory of the case. First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.

**2.      Eighth Amendment.**

The government has an obligation under the Eighth and Fourteenth Amendments "to provide medical care for those whom it punishes by incarceration." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*). Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than the Eight Amendment, but because detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, the same standards are applied. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

To state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Indications that a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy

of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*).

"[D]eliberate indifference to a prisoner's serious medical needs is the 'unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 104-05. An official is deliberately indifferent if he both knows of and disregards an excessive risk to an inmate's health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, to demonstrate deliberate indifference, a plaintiff must establish that the alleged harm was "sufficiently serious" and that the official acted with a "sufficiently culpable state of mind." Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298, 302-3 (1991)). Mere negligence or medical malpractice does not establish a sufficiently culpable state of mind. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). A prisoner does not have to prove that he was completely denied medical care in order to demonstrate deliberate indifference. Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000). Deliberate indifference may be shown when an official denies, delays, or intentionally interferes with treatment or by the way that a medical professional provides care. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). But a difference of medical opinion is insufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the course of treatment the doctors chose was medically unacceptable in light of the circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

**D.     Analysis.**

**1.     Physical Injury.**

Defendants' first argument for summary judgment is that Plaintiff failed to show physical injury as required under § 1997e(e) of the PLRA (Doc. #51 at 3-4). The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail,

- 11 -

prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002). The physical injury requirement applies *only* to claims for mental or emotional injuries and does not bar claims for compensatory, nominal or punitive damages. Id. at 630.

Here, Plaintiff did not bring any claims for mental or emotional injuries; rather, he alleged violations of his constitutional rights and specifically sought compensatory and punitive damages (Doc. #1). In Oliver, the plaintiff's complaint sought punitive damages and was construed to be "consistent with a claim for nominal damages." Id. at 630. The Court determined that even absent physical injury, a prisoner was entitled to seek compensatory, nominal, and punitive damages premised on violations of his Fourteenth Amendment rights. Oliver, 289 F.3d at 629-30. Thus, to the extent that Plaintiff has actionable claims for compensatory, nominal, and punitive damages based on violations of his Eighth and Fourteenth Amendment rights, his claims are not barred by § 1997e(e). Summary judgment on this basis will be denied.

**2.     Count I -- Medical Diet.**

Defendants' evidence demonstrates that Plaintiff received a modified diet to assist in the treatment of Crohn's disease (Doc. #55, Ex. B, Exs. 4, 6 (copies of modified diet orders)). Indeed, the dietician set up a special menu exclusively for Plaintiff that incorporated both kosher and low residue items (id., Ex. B, Reddy Aff. ¶ 17, Doc. #57, Ex. 23). In response to Plaintiff's complaints, Reddy investigated and discovered that when the detention officers sent the diet list from Plaintiff's unit to the kitchen, they did not list the whole combination diet. Instead, they listed "kosher" and dropped the "low residue" label so the kitchen provided only the kosher meal items (Doc. #57, Ex. 23). The dietician acknowledged that at times officers did not always follow the menu list due to lack of attention to detail and lack of supervision (id.). So Reddy raised this issue with jail security and spent time with staff and inmates in the kitchen area providing training on how to put together the proper diet

sacks (id.). Plaintiff also confirms that he met with the dietician three times (Doc. #1 at 4 Cont.). In sum, Defendants demonstrated that they were responsive to Plaintiff's concerns and complaints about his meals and attempted to provide the proper medical diet.

On this record, Defendants have met their initial burden to present the basis of their motion and identify portions of the record that show an absence of a genuine issue of material fact. The burden now shifts to Plaintiff to present specific facts that a genuine issue exists. Fed. R. Civ. P. 56(e).

Plaintiff has failed to meet this burden. He claims that despite the assigned low residue diet, he continued to receive food that was not proper for his health condition. Plaintiff's suggestion to remedy the deficient meals was to either go to a hospital or be assigned a job in the kitchen, presumably so that he could prepare his own meals. But these proposed remedies are not reasonable. Defendants have an interest in providing a simplified food service as opposed to one that would present financial, administrative, or security difficulties. See Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) (addressing First Amendment claim about the provision of religious diets to prisoners). The evidence demonstrates that Defendants have already spent extra resources on fashioning a special diet to meet Plaintiff's needs. More importantly, the Ninth Circuit has held that a delay in providing special medical diets to prisoners is not unconstitutional. Toussaint v. McCarthy, 801 F.2d 1080, 1112 (9th Cir. 1986). Even without this precedent, Defendants' attention to Plaintiff's complaints and repeated attempts to correct the meal service problems would prohibit any finding of deliberate indifference. Defendants therefore are entitled to summary judgment on Count I.

### 3. Counts II and VIII - Medical Treatment and Medications.

There appears to be no dispute that Plaintiff's medical condition constituted a serious medical need. See McGuckin, 974 F.2d at 1059-60. Defendants make no argument to the contrary, and the record reflects that Plaintiff's ailments warranted excessive treatment and medication and a diet tailored to his needs. Plaintiff claims that he suffered severe pain during most of his confinement at the Durango Jail (see Doc. #1 at 4-5 Cont., 11).

Construing Plaintiff's allegations liberally, there is a material question of fact regarding whether his medical conditions affected his daily life or resulted in substantial pain such that he suffered a serious medical need.

Even assuming that Plaintiff suffered a serious medical need, medical treatment does not constitute deliberate indifference unless (1) Plaintiff suffered harm as a result of Defendants' acting with a culpable state of mind or (2) Defendants caused a delay in care that they knew was harmful. Farmer, 511 U.S. at 834; Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (quoting Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (*per curiam*)); see Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (the Eighth Amendment is only violated if "delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case").

It is undisputed that on his third day in jail, Plaintiff was sent to the hospital for an MRI and other tests (Doc. #1 at 5). Defendants' evidence shows that during Plaintiff's 6-month confinement at the jail he was seen by medical staff on 25 occasions, in addition to an initial 6-day treatment in the Psychiatric Unit and numerous evaluations for medications (Doc. #52, Ex. A, Wilcox Aff. ¶¶ 14-15). The record also demonstrates that Plaintiff was provided Prilosec for his Crohn's disease and that his request for alternative medication was investigated but determined to be unnecessary (id. ¶¶ 22-23). He was also prescribed various other medications, including Darvocet, throughout his time at the jail (Doc. #54, Ex. 19, Parts 3-4). As to the edema and swelling on Plaintiff's left buttock, the medical records reflect that Plaintiff received treatment by a CHS medical provider and the problem was resolved by late September 2004 (id, Ex. A, Wilcox Aff. ¶ 11(m), Doc. #53, Ex. 16).

Plaintiff alleges that the lack of proper medical care was "willful, knowing, and intentional" and with "an air of indifference," and that treatment was repeatedly delayed or simply denied" (Doc. #1 at 5 Cont.; 11 Cont.). But Plaintiff submits no medical evidence to show how he was harmed by the treatment, medications, or lack of medications he received while at the Durango Jail. Nor does Plaintiff proffer any medical evidence to refute the CHS

- 14 -

medical staff's decisions regarding the proper course of treatment for his various ailments. On a motion for summary judgment, bare allegations unsupported by any factual data do not give rise to a genuine dispute of material fact. See Hansen v. U.S., 7 F.3d 137, 138 (9th Cir. 1993). Plaintiff's claims that Defendants willfully and intentionally denied him proper treatment are simply too general to indicate that he was harmed by deliberate indifference to his medical needs. And by failing to submit a brief in opposition to summary judgment, Plaintiff did not set forth any more specific facts demonstrating Defendants' alleged deliberate indifference. Plaintiff therefore failed to establish an essential element of his case on which he bears the burden of proof at trial. See Celotex, 477 U.S. at 322-23. Summary judgment will be granted to Defendants on Counts II and VIII.

The Court need not address the legal arguments raised by Defendants concerning individual liability and punitive damages (see Doc. #51 at 9-10).

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss (Doc. #43) is **granted**.
2. The Clerk of Court must dismiss Counts III, V, and VI without prejudice.
3. Plaintiff's Motion for Sanctions (Doc. #48) is **denied.**
4. Defendants' Motion to Summarily Grant Previously Filed Motion (Doc. #64) is **denied**.
5. Defendants' Motion for Summary Judgment (Doc. #51) is **granted**.
6. The Clerk of Court must dismiss Counts I, II, and VIII with prejudice.
7. The Clerk of Court shall dismiss this action and enter judgment accordingly.

DATED this 17th day of January, 2008.

_____
David G. Campbell
United States District Judge